WILLIAM LOWE, plaintiff in error, *vs.* ALEXANDER S. BROOKS, administrator, defendant in error.

The common law doctrine of survivorship among joint tenants was abolished by the fifty-first section of the Constitution of 1777.

In Equity, in Upson Superior Court. Decision on demurrer, by Judge CABINESS, at May adjourned Term, 1857.

This was a bill filed by Alexander S. Brooks, administrator of John Lowe, deceased, against William Lowe, to recover the share or interest of his intestate in two negroes and their hire, alleged to be in the possession of defendant.

The bill alleges that Mary Rabun of the county of Hancock, departed this life, leaving in full force her last will and testament, bearing date the 7th January, 1841; and that in and by the 9th clause of said will, testatrix directed that certain negroes therein named, (to-wit, Rhoda, Violet, Martha, Haywood and Francis) should be sold, and that the proceeds of said sale be equally divided between her children, Martha Battle, Amanda L. Cato, Maria E. Wooten, and the children of her deceased daughter Elizabeth Lowe; said children to have one share, which is one-fourth of the proceeds of said sale. That at the time of testatrix's death there were three children of said Elizabeth in life, to-wit., James Lowe, since deceased, John Lowe, deceased, complainant's intestate, and Emma Lowe, a minor now in life.

The bill further states that in the year 1841, after the death of testatrix, the defendant William Lowe, who is the father of said James, John and Emma, received two negroes, Rhoda and Violet as the share or portion to which his children were entitled under the 9th clause of said will. That he received and has held said negroes for the benefit of his said infant children. That he has retained the possession of them, receiving and enjoying the profits of their work and labor ever since, and now has them. That complainant as the

administrator of James Lowe, is entitled to one-third of said negroes and their hire. That defendant refuses to deliver to, or account with the complainant for the share or interest of his intestate in and to said negroes and their hire, but denies his right to any part thereof.

The following is the clause of the will of Mary Rabun, deceased, by which the joint estate or tenancy was created, to-wit:

*Art.* 9. The balance of my negroes, viz., Rhoda, Violet, Martha, Haywood, and Francis, I wish sold, and the proceeds equally divided between my children, Martha Battle, Amanda L. Cato, Maria E. Wooten, their heirs, &c., and the children of my deceased daughter, Elizabeth Lowe, said children to have one share, which is one-fourth of the same.

Defendant demurred to the bill for want of equity in this, that under said will, James, John and Emma took an estate as joint tenants, and that upon the death of James and John, the whole vested in Emma as survivor.

The Court overruled the demurrer, and counsel for defendant excepts and tenders his bill of exceptions, &c.

T. W. & C. T. GOODE, for plaintiff in error.

SMITH, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

John, James, and Emma Lowe were joint tenants of the slaves in dispute. John and perhaps James, died.

The question is, whether John's interest in the slaves, in whole, or in part, went on his death, to Emma.

By a rule of the common law, on the death of one joint tenant, the property, held in joint tenancy, whether real, or personal, went to the surviving joint tenants.

Lowe vs. Brooks adm'r,

In 1828, the Legislature passed an act in these words: "*Whereas*, it is doubtful whether the right of survivorship, as under the English law, does not still exist in this State, in all estates of joint tenancy."

"*Be it enacted*, That from, and after, the passage of this act, when two or more persons shall hold and possess any estate of lands in joint tenancy, in this State, and one or more of said joint tenants may depart this life during the existence of said estate, the title or interest of the deceased joint tenant, in said estate, shall not go and become the property of the surviving joint tenant or tenants, as under the English law, but that the same shall be distributed as all other estates, under the existing laws of this State." *Cobb's Dig.* 545.

This act confines itself to estates in "lands."

In 1854, the Legislature extended the act "to personal estate held in joint tenancy." *Acts of* 1853–'4. 70.

But John Lowe, the one of the joint tenants in this case, who is dead, died *before* the year 1854. So, at least, it is assumed, by the counsel on both sides.

That act, therefore, cannot affect the question.

But it is insisted for the defendant in error, that this common law principle of survivorship among joint tenants, did not exist in this State at the time when even the first of those two acts was passed. It is insisted for him, that this doctrine had been abolished by the people, or by the Legislature, long before 1828.

The question for us, therefore, is, whether this position taken for the defendant, is true? To that question, I proceed.

A part of the 51st section of the Constitution of 1777, is as follows:

"Estates shall not be entailed; and when a person dies intestate, his or her estate shall be divided equally among his or her children; the widow shall have a child's share or her dower at her option."

"A person"—this is equivalent to a general term. It

means *any* person. It must therefore equally include, persons who are sole tenants, and persons who are tenants in connection with others ; as, tenants in common, tenants in coparcenary, and *joint tenants*.

If, therefore, the meaning of the term, "a person," had been expressed in full in the part of the quoted section of the Constitution, that part would have taken this form— "and when any person, *whether sole tenant, tenant in common, tenant in coparcenary, or joint tenant*, dies intestate, his or her estate shall be divided equally," &c.

And if the part had taken this form, it would have included the sense, if not almost the very operative words, of the act aforesaid of 1828. "And one or more of said joint tenants may depart this life during the existence of said estate, the title or interest of the deceased joint tenant," &c. shall be distributed," &c. These are the operative words of that act.

It must follow, that if the *act* of 1828 was sufficient to abolish this doctrine of the survivorship among joint tenants, then the above quoted part of the Constitution of 1777, was also sufficient to abolish the doctrine, and therefore, it must follow, that this part of the Constitution of 1777, did abolish the doctrine.

But even if we did not have the Act of 1828, to aid us in the interpretation of this part of the Constitution of 1777, we should, I think, have to come to the same conclusion.

First, let us look to the words of this part: The words, a "person," in the part, being equivalent to the words, *any person*, they include a person, though he be, a joint tenant.

If then we express what is thus impliedly included, the part of the Constitution in question, would stand as follows : " when any person not excepting a joint tenant, dies intestate, his or her estate shall be divided equally," &c,

It may be assumed, therefore, that this part of the Constitution, says, that the *estate* of any person not excepting a joint tenant, when he dies intestate, shall be equally divided among his wife and children," &c.

Lowe vs. Brooks adm'r.

What then means the expression, the *estate* of a deceased person, when applied to the case of a deceased person, who died a joint tenant ? Does it mean that estate only which he held as sole tenant, or that, and also the estate which he held as joint tenant?

The answer of men unskilled in the law, would doubtless be, that the expression means all the estate which the deceased person had when he died, including that which he had, as joint tenant, as well as that which he had, not as joint tenant.

This, too, would, doubtless, as we have seen, have been the answer of the Legislature of 1828, for the *operative* words of their act aforesaid, differ little, from the expression under consideration.

And if this would be the answer of the generality of men, and the Legislature itself, perhaps, we ought to be satisfied, and ought to say, it is the answer.

But is it impossible, that this might not also be the answer of the lawyer ? Is it certain, that the law, (the common law,) says, that what a dead man holds as joint tenant, when he dies, cannot be a part of his estate after his death, but, without having become any part of that estate, must pass directly to the surviving joint tenant ? To say so, is to say, that a joint tenant cannot be a tenant in fee simple, but can only be a tenant in some limited fee, or, a tenant for life; for what belongs to a person, as tenant in fee simple, becomes a part of his estate on his death. But, it is beyond question, that a person may be joint tenant in fee simple.

And to say, (in the case of a joint tenancy in fee simple, and death of one of the joint tenants) that the survivor takes the part of the estate that had belonged to the deceased one, as successor to *him*, is not to do more violence to the *conveyance* creating the joint tenancy, if as much, as would be done to it, if we said, that such survivor takes as successor to the *maker* of that conveyance; (and we *have* to say, that he takes as successor to the one or the other,) for the convey-

ance being one in fee, is a conveyance to the two joint tenants and their heirs; the effect of which is, to create two fee simple estates, joined together, it is true, but still two, one in one joint tenant, the other, in the other; and to say, that the survivor takes the one of these two estates, that was the estate of the other, as successor to the *maker of the conveyance*, that is, by the conveyance is to say, what the conveyance itself opposes, for the *conveyance* gives to him who is the survivor, but one of the two estates, and the other of the two estates, it gives to him who has become the deceased joint tenant. The survivor cannot take by the *conveyance*.

It follows, then, that he must take by the *law*.

Taking by the *law*—it is as easy to consider him, as taking under the deceased joint tenant, as it is, to consider him, as taking under the creator of the joint tenancy. Considered as taking under the deceased joint tenant, what he takes, must, of course, be something that belongs to the *estate* of that tenant. And this something is what that tenant had held, as joint tenant, when he died.

Therefore, we may say, in answer to the question, under consideration, that it is *not* certain, but that, what a dead man held as joint tenant when he died, may by the *law* constitute a part of his estate after his death, and consequently, that it is not certain, but that, when what he so held passes to the survivor, it has to pass to him as a part of the *estate of the deceased joint tenant*.

Littleton, goes no further, I think, than to say, that the survivor takes by *the law*. In one place he says, that the survivor "hath the land by the survivor, and hath not, nor can claim anything by descent from his companion," &c. Sec. 286. In another place he says, "by his death all the land presently commeth by law to his companion which surviveth, by the survivor." Sec. 287. Thus, we may say, comes dower to the widow. We do not say, it comes by *descent;* yet it *is* cast upon her by the *law*. So, of estates by the curtesy, and estates after possibility of issue extinct.

But Coke commenting on the section first quoted from, says, " and the cause, wherefore the survivor shall not hold the land charged, is, for that he claimeth the land from the first feoffor, and not by his companion, which is Littleton's meaning when he saith, (that he claimeth by survivor,) for the surviving feoffee may plead a feoffment to himself, without any mention of his joint feoffee."

So much for the argument from the words aforesaid, of the Constitution of 1777.

I think, we may safely say, that the *contemporary interpretation* of this part of that Constitution was, that the part abolished this common law doctrine of survivorship among joint tenants. Otherwise why was it, that the Legislature waited until 1828, before it interfered with the doctrine. The doctrine is one at war with every natural instinct.

And when the Legislature did in 1828, interfere with it, the language used by it, shows, that it did so, not as believing the doctrine to be in force, but out of abundant caution, lest it might be in force. The preamble of the Act of 1828, begins—" *Whereas* it is doubtful whether the right of survivorship" &c, " does not still exist." May we not say from this language, that if the question had been put to vote before this Legislature, whether the law was or was not in force, the vote would have been, that it was not in force.

It is undisputed, that this part of the Constitution of 1777, abolishes primogeniture; that is, postpones the first born son to the widow and the children collectively; and all the reasons that exists, for postponing him to them, equally exist for postponing a surviving joint tenant to them, and a strong reason besides; he is, or, may be, *a stranger* to the blood of his companion.

Again, the first clause of this part of the Constitution of 1777, is, " estates shall not be entailed."

The law of entails tended to make property accumulate in the hands of a single person; but it was a law that supplied the means of gratifying one of the instincts of our nature,

the desire to keep our property together, and in our own hands, or in the hands of some of our relatives.

The law of survivorship among joint tenants, also, has this tendency, although it has the tendency in a less degree; and, then, it is not a law by which any natural instinct of the party whose property it disposes of, can be gratified, but, on the contrary, is a law by which one of the best and strongest of his instincts, may be defeated; the desire that his wife and children may enjoy the property which, when he dies, he leaves behind him.

Upon the whole, then, we think that the common law doctrine of survivorship among joint tenants, was abolished by the Constitution of 1777.

If we are right in this, the doctrine has never since the date of that Constitution, been in force, and the adopting Act of 1784, adopted no laws that were against the Constitution of 1777. And there is no other adopting act.

So we think, that the judgment of the Court below ought to be affirmed.

Judgment affirmed.